FOURNET, Chief Justice.
The defendant, Theodore A. LiRocchi, having' exercised his option to purchase certain property by signing a written agreement to purchase and tendering 10% of the purchase price, which was accepted by the plaintiffs, Joe B. Ragusa and Russell R. Saia, subsequently demanded a diminution of the purchase price, or, in the alternative, a return of his deposit, whereupon plaintiffs instituted a suit for specific performance.[1] Defendant answered alleging that the option and the agreement to purchase should be set aside because of fraud, or, in the alternative, that plaintiffs should be ordered to effect a diminution of the purchase price; [2] and in a re-conventional demand defendant sought to recover the moneys deposited, damages and attorney’s fees. From a judgment ordering him to specifically perform the contract defendant prosecutes this appeal.
The property involved in this suit[3] is located in Devil’s swamp, [4] which is presently being converted into a barge terminal by the construction of a canal (commonly known as Devil’s Swamp Canal), connecting it with the Mississippi River. As soon as the proposed canal project received widespread publicity, land prices in Devil’s Swamp rose sharply on the speculator’s market,[5] and defendant, who had speculated in real estate for a number of years, took a 30-day option, dated November 16, 1956, from plaintiff Ragusa to purchase the property for $64,000.00 cash or $69,000.00 if paid on credit terms, paying $1,000.00 as consideration for the option. At the time this option was signed neither one of the plaintiffs owned the property, and only one of them, plaintiff Ragusa, was the holder of a 30-day option from the then owner William J. Borskey. Defendant’s option stated that the property was subject to certain specifically mentioned recorded liens and contained the additional stipulation that *523 Defendant was also furnished a map by plaintiff Ragusa, which outlined the proposed course of the channel and the areas to be used for permanent and temporary spoil disposal. On December 15, 1956, defendant, in exercising his option, elected to purchase the property for $69,000.00 on credit terms and submitted an offer to buy the property, as described in the option and shown on the map, “subject to any valid restrictions and servitudes of record, and to any zoning ordinances affecting this property,” no mention being made of the unrecorded Borskey agreement referred to in the option.[7] This offer was unconditionally accepted on December 15, 1956, by both plaintiffs, who had purchased the property from William J. Borskey on December 13, 1956. Subsequently, defendant became apprised that a large portion of the acreage involved would be utilized by the canal project and, although having had in his possession the map from which he could have determined the extent of the acreage to be lost, he nevertheless contended that this matter had been misrepresented by the plaintiffs and their agents in that they allegedly assured him that only 5 acres would be used for the canal project, and made demand upon plaintiffs to reduce the price accordingly or, in the alternative, return all moneys deposited. Plaintiffs ignored this demand and brought the suit for specific performance.
*522 “the property hereinabove described is subject to servitudes granted to the United States and the Greater Baton Rouge Port Commission for the purpose of the construction of a navigational canal over a portion of the same and for other purposes, such as spoil disposal areas, as contained in written agreements between William J. Borskey, the United States Government, and the Greater Baton Rouge Port Commission, which are not of public record.” [6]
*523 Defense counsel in open court abandoned the demand for damages and attorney’s fees and also disavowed his claim that the option and the agreement to purchase had been fraudulently procured by the plaintiffs. In arguing that defendant should nevertheless be excused from specific performance, counsel for the defense contends that defendant never accepted the terms of the option making the property subject to servitudes not of record, but instead submitted a counter offer limiting the restrictions to servitudes of record only, which was unqualifiedly accepted by the plaintiffs. In any event, counsel argues that plaintiffs cannot deliver title in accordance with the option, since they executed on December 13, 1956, while the option was still in effect, a ratification and agreement document,[8] in which they granted greater rights to the Greater Baton Rouge Port Commission than those granted by Borskey in the agreement referred to in the option, and suggested in open court that we remand the case in order to introduce in evidence a deed,[9] executed by the plaintiffs subsequent to trial in the court below, which will show *524 that the plaintiffs have breached their agreement, thus making it impossible for them to perform their obligations under the contract.
While neither of these issues was pleaded in the lower court, the record reveals that the plaintiffs introduced in evidence the ratification and agreement document, dated December 13, 1956, wherein it is specifically .stated that whereas under the 1954 [the Borskey] agreement the landowners were ;to have the unrestricted use of the banks of the canal, the Greater Baton Rouge Port Commission in order to facilitate .financing the canal project desired to restrict the use of the canal banks, and the landowners agreed that “the Greater Baton Rouge Port Commission shall have the exclusive right to create, operate and administer public wharves, docks, sheds and landings on the said Baton Rouge Barge Channel on lands hereafter to be acquired in full fee title by said Commission; and they will further agree that Grantors will not construct on lands fronting on said channel any facilities for the handling of molasses or grain, whether public or private.” Consequently, it is immaterial whether the December 15 agreement to purchase was in accordance with the option previously executed or was a new offer as contended by defendant, for from the foregoing it is clear that the plaintiffs themselves are incapable of specifically performing under either circumstances, and are, therefore, not entitled to specific performance. See Pratt v. McCoy, 128 La. 570, 54 So. 1012; New Orleans Polo Club v. New Orleans Jockey Club, 128 La. 1044, 55 So. 668; Lamar v. Young, 211 La. 837, 30 So.2d 853.
Having reached the conclusion that we cannot order specific performance in this case, because plaintiffs, in violation of their contract, executed the Decemeber 13 ratification agreement and the instrument in pursuance thereof, defendant is entitled to recover the amount of $1,000.00 paid to plaintiff Ragusa as consideration for the option of November 16, 1956, and the deposit of $6,900.00 paid to plaintiffs Ragu-sa and Saia on December 15, 1956, in connection with the agreement to purchase.
For the reasons assigned, the judgment of the lower court is annulled and set aside; and it is now ordered, adjudged and decreed that the plaintiffs’ suit be dismissed, and that the defendant, as plaintiff in reconvention, do have and recover judgment against Joe B. Ragusa, individually, in the amount of One Thousand and no/100 ($1,000.00) Dollars, with legal interest from the date of judicial demand, and against Joe B. Ragusa and Russell R. Saia, in solido, for the sum of Six Thousand Nine Hundred and no/100 ($6,900.00) Dollars with legal interest from the date of judicial demand, and for all cost.

. The agreement specifically provided that ' the deposit was not to be considered as' earnest money, the parties reserving the right to demand specific performance.

. Although defendant pleaded for a diminution of the price, he did not pray for a diminution in the lower court and did not submit any claim for diminution in brief before this court.

. The property is described as follows: “A certain tract or parcel of land situated in the Parish of East Baton Rouge, State of Louisiana, in Township 5 South, Range 1 West, containing one hundred (100) acres, more or less, and shown on the official map of the Parish made by Kaiser and Swenson, Civil Engineers, in 1895, as in the name of Jhoner and Whitaker, said tract being bounded on the north by lands of Mrs. E. L. Xoung, on the south by tract in the name of S. B. Jones, and on the west by the Mississippi River; being the same property acquired by William J. Borskey on July 19, 1941, per act recorded as Original 49 of Bundle 1414 in Conveyance Book 487, Eolio 143, in the Office of the Clerk of Court and Ex-Officio Recorder for the Parish of East Baton Rouge, Louisiana.”

. Devil’s Swamp is located on the Mississippi River, immediately north of Baton Rouge’s industrial area and would have no commercial value were it not for the canal project currently in progress.

. Plaintiff Ragusa testified that he paid $309.00 per acre on December 13, 1956, and that his predecessor in title, William J. Borskey, who acquired the property in 1941, had only paid $10.00 per acre.

. The agreement referred to in the above option bears the date June 23, 1954, and lists nine landowner groups in the Devil’s *523 Swamp area, all of whom had to join in the execution or signing of the agreement before it could become effective for the purpose of granting to the United States of America the necessary servi-tudes for the construction of a barge canal or channel. The agreement specifically states that the actual servitudes are to be executed subject to the approval of the attorney of each of the landowner groups.

.The pertinent part of this offer states: “I/we offer and agree to purchase the property of Joe B. Ragusa located at Devil Swamp — (as desoripted in option) and as shown on map Borskey tract, the grounds measuring about 100 acres as per title for the sum of Sixty Nine Thousand Dollars ($69,000.00) subject to any valid restrictions and servitudes of record and to any zoning ordinances affecting this property on terms of 25% down — Balance in 3 annual payments or sooner — at 6% interest.
“Title to be passed within 6 months from this day.”

. The December 13 agreement, listing a total of 10 landowner groups and providing that it shall become effective when signed by the 10 landowner groups and the Greater Baton Rouge Port Commission, contains various changes from the prior agreement signed by Borskey.

. The conclusion we have reached makes it unnecessary to remand the case as was requested by defendant’s counsel. Furthermore, counsel for the plaintiffs in open court conceded that such a document had been executed and referred to a copy thereof that had been introduced prior to its execution. This instrument contains the provision that it “shall inure to the benefit of and be binding upon the heirs, successors and assigns of the parties hereto.”